IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Debra A. Hicks, | ) | C/A No. 0:09-3053-CMC-PJG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Debra A. Hicks ("Hicks"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

In November 2005, Hicks applied for SSI and DIB. Hicks's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on November 21, 2008 at which Hicks appeared and testified and was represented by Thomas M. Bultman, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated March 4, 2009 finding that Hicks was not disabled. (Tr. 11-19.)

Hicks was born in 1961 and was forty-eight years old at the time of the ALJ's decision. (Tr. 102.) She completed four years of college and earned a certificate as a surgical technologist and as a medical assistant. (Tr. 28-29, 138-39.) She has past relevant work experience as a resident assistant, office assistant, salon staff, optometry technician, and surgical assistant. (Tr. 124, 134.)

Hicks alleges disability since January 28, 2004 due to chronic obstructive pulmonary disease ("COPD") and cardiomyopathy. (Tr. 133.)

The ALJ made the following findings and conclusions:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since January 28, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: congestive heart failure, cardiomyopathy with left ventricular dysfunction and hypokinesis of inferior wall, hypertension, ventricular tachycardia, status-post defibrillator and pacemaker placement, degenerative disc disease of the cervical spine with status-post fusion of C5-6 in 1997, and migraine headaches (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to carry up to 10 pounds occasionally and less than 10 pounds frequently; to stand and/or walk up to 2 hours in an eight-hour workday; with a sit/stand option every 60 minutes at the workstation; with occasional stooping, crouching, kneeling, balancing, and climbing stairs or ramps; with no crawling, or climbing of ladders, ropes, or scaffolds; with avoidance of hazards such as unprotected heights, vibration and dangerous machinery; and with no concentrated exposure to extremes of humidity and temperature.

\* \* \*

6. The claimant is capable of performing past relevant work as an appointment clerk and as a patient preparation assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2004, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-19.)

Hicks filed a request for Appeals Council review and submitted additional evidence in support of her claim. On September 22, 2009, the Appeals Council denied Hicks's request for review and concluded that none of the additional evidence provided a basis for changing the ALJ's decision, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) Hicks filed this action on November 23, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a "severe" impairment;

(3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)  whether the claimant can perform [her] past relevant work; and

(5)  whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

*PJG*

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Hicks raises the following issues for judicial review:

I. The ALJ erred in the assessment of the claimant's allegations of physical limitations from cardiomyopathy and frequent migraine headaches in the determination of her residual functional capacity[.]

II. The ALJ erred by failing to comply with SSR 96-8p's requirement of a detailed analysis of RFC findings.

III. The ALJ erred by failing to properly assess plaintiff's ability to perform past relevant work as required by SSR 82-62.

(Pl.'s Br., ECF No. 8.)

## DISCUSSION

**A.    Subjective Complaints**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second step is at issue,[1] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects her ability to work." Id. In making this determination, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

---

[1] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id. Further, "[i]n analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

In this case, the ALJ found that Hicks's "allegations concerning her impairments, symptoms and the ability to work are not substantiated by the total evidence of record and not fully credible." (Tr. 14.) In reaching this conclusion, the ALJ expressly considered several factors in discounting the credibility of Hicks's subjective complaints, including not only Hicks's testimony but also the medical and nonmedical evidence. For example, the ALJ recognized that Hicks testified that her medications caused side effects including dizziness and headaches, but noted that the medical evidence does not demonstrate that Hicks reported any significant complaints of medication side-effects. (Id.) The ALJ also observed that Hicks testified that her daily activities included: "dressing without assistance on most days, doing some laundry, grocery shopping with her fiancé, and reading"

*PJG*

and that she also reported to Dr. Tawana Barrow, a psychiatrist, that she was pursuing activities such as attending NASCAR events, hunting with her boyfriend, and gardening. (Id.) Finally, while noting that the hearing was short-lived and that Hicks's appearance and demeanor during the hearing cannot be considered a conclusive indicator of the claimant's overall level of functioning, the ALJ gave some weight to these observations. (Id.)

In support of her position that the ALJ erred in discounting her credibility, Hicks argues that "[t]he ALJ failed to properly assess [Hicks's] allegations concerning the limitations of significant fatigue and shortness of breath from the cardiomyopathy, the frequent migraine headaches and the chronic hip pain." (Pl.'s Br. at 20, ECF No. 8 at 20.) Hicks appears to argue that the medical evidence supports her allegations. She discusses cardiomyopathy in general and points to some of her echocardiogram test results. Hicks also argues that Dr. Venk Gottipaty, her treating physician, noted that Hicks exhibited New York Heart Association ("NYHA") Class II congestive heart failure symptoms. According to the plaintiff, and the defendant appears to agree, a Class II classification indicates: "Patients with cardiac disease resulting in slight limitation in physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain." (Pl.'s Br. at 4 n.1, ECF No. 8 at 4 n.1; see also Def.'s Br. at 3 n.3, ECF No. 9 at 3 n.3.) Hicks also argues that the medical evidence demonstrates that she visits the clinic or emergency room for pain medication for her migraines which supports her allegations that she has at least two migraines per month that last for at least three days. Furthermore, Hicks contends that the ALJ improperly engaged in the "sit and squirm" evaluation to reduce Hicks's credibility. Finally, Hicks argues that the ALJ improperly relied on statements in Dr. Barrow's notes concerning her activities without questioning Hicks about them.

Upon a thorough review of the record as a whole, the court finds that the ALJ conducted a proper analysis in determining the credibility of Hicks's subjective complaints. See Craig, 76 F.3d at 595; Gowell, 242 F.3d at 796. In determining that Hicks's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Hicks's subjective complaints in conjunction with her abilities to perform daily activities and the medical evidence.

While Hicks may point to selective medical evidence in the record in support of her argument, such evidence does not render the ALJ's decision unsupported. For example, as noted by the ALJ, Dr. Gottipaty's treatment notes demonstrate that Hicks responded well to treatment and reveal improvement in her functioning. (See Tr. 16-17, 230, 232, 234, 325, 328, 330, 340, 366, 579-81, & 583.)[2] With regard to Hicks's allegations of disabling migraines, as observed by the ALJ, the medical evidence reveal that over a period of five years, Hicks went to the emergency room at most five times for treatment. (Tr. 18.) Treatment notes also indicate that Hicks could perform her own housework and some yard work and observe that she had an active lifestyle. (Tr. 14-15, 237, 581.) Finally, although challenged by Hicks, the record supports the ALJ's findings concerning Hicks's daily activities. For example, Hicks reported (1) in November 2007 that "everything is good with my heart" and that she was attending NASCAR events; (2) in January 2008 that she was "doing just fine—having a blast hunting with [her significant other] and spending time with my kids and their

---

[2] The court observes that two of these records noted that Hicks's symptoms have improved to a Class I classification. While Hicks may dispute at least one of these notations as a typographical error, the court notes that at the close of the hearing the ALJ left the record open in part for Hicks's attorney to contact Dr. Gottipaty to give him an opportunity to clarify his opinion that Hicks is unable to work in light of his treatment notes indicating that she was doing remarkably well with, at times, Class I symptoms. (Tr. 45-46 & 60.) However, it does not appear that any additional records or explanations supporting Dr. Gottipaty's opinion were submitted prior to the ALJ's decision.

Page 8 of 14

PJG

friends over Christmas" and indicated that she enjoys hunting and gardening; (3) in March 2008 that she was raising a puppy with her significant other; and (4) in October 2008 that she injured her ankle while hunting. (Tr. 588, 660, & 661.) Even if the court were to accept Hicks's argument that the ALJ improperly applied the "sit and squirm" test in evaluating Hicks's subjective complaints, there is nonetheless substantial evidence supporting the ALJ's finding that Hicks's complaints regarding the effects of her symptoms are inconsistent with the record. See Gross, 785 F.2d at 1166 (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); see also Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Based on the record as a whole, the court cannot say that the ALJ's determination on Hicks's credibility is not supported by substantial evidence.

**B.   Social Security Ruling 96-8p**

Hicks also argues that in performing her residual functional capacity ("RFC") assessment, the ALJ failed to perform a detailed analysis of her physical and mental abilities in his decision pursuant to SSR 96-8p. Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The

Page 9 of 14

*PJG*

RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p. Specifically, Hicks appears to argue that Hicks's RFC fails to account for the fact that she experiences fatigue with minimal exertion and that the ALJ failed to address how Hicks would be able to work if she missed six days per month due to her migraine headaches.

As stated above, the ALJ determined that Hicks retained the RFC

> to carry up to 10 pounds occasionally and less than 10 pounds frequently; to stand and/or walk up to 2 hours in an eight-hour workday; with a sit/stand option every 60 minutes at the workstation; with occasional stooping, crouching, kneeling, balancing, and climbing stairs or ramps; with no crawling, or climbing of ladders, ropes, or scaffolds; with avoidance of hazards such as unprotected heights, vibration and dangerous machinery; and with no concentrated exposure to extremes of humidity and temperature.

(Tr. 13-14.)

In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence. (Tr. 14-18.) The ALJ's discussion explained his resolution of inconsistencies or ambiguities in the evidence in the case record, such as his evaluation of Hicks's subjective complaints as well as the opinion of her treating physician. (Id.) To the extent that Hicks alleges that the ALJ's decision fails to address whether she could work on a "regular and continuing basis," the United States Court of Appeals for the Fourth Circuit has found that RFC determinations may implicitly include such a finding. See Hines, 453 F.3d at 563 ("In light of SSR 96-8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that [the plaintiff] physically is able to work an eight hour day."). Similarly, Hicks's allegations that the ALJ failed to account for her migraine headaches is without merit. The ALJ found Hicks's subjective allegations not fully credible. Further, the ALJ specifically observed that Hicks's "conditions have been successfully managed by her treating

physicians without the need for frequent urgent care or in-patient treatment" and observed that over a period of five years, Hicks received emergency care for migraines at most five times. (Tr. 18.) Accordingly, Hicks has failed to demonstrate that the ALJ failed to comply with the requirements of SSR 96-8p.

**C.     Past Relevant Work**

Hicks contends that the ALJ erred in determining that she could return to her past work as an appointment clerk and as a patient preparation assistant. In support of this contention, Hicks points out that SSR 82-62 requires an ALJ to make three specific findings of fact in determining whether an individual has to capacity to perform past relevant work:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job.
3. A finding of fact that the individual's RFC would permit a return to her past relevant job.

(Pl.'s Br. at 26, ECF No. 8 at 26.) Hicks argues that the ALJ failed to include a determination that Hicks's past relevant jobs would accommodate her limitation to sit and stand as needed in accordance with the RFC determination.

Based on the testimony of a vocational expert and in accordance with Hicks's RFC, which included a sit/stand option every 60 minutes at the workstation, the ALJ determined that Hicks could return to her past relevant work as an appointment clerk and as a patient preparation assistant as it is "actually and generally performed." (Tr. 19.) The vocational expert testified that Hicks's past work as an appointment clerk (DOT # 237.367-010) was in the beginning range of semi-skilled work and was sedentary exertional work. He also stated that her work as a patient preparation assistant (DOT # 205.362-018) was in the mid-range of semi-skilled work and was sedentary exertional work. (Tr. 56-57.) Having been presented with the above stated RFC, the vocational expert responded that

Hicks could perform her past relevant work as an appointment clerk and as a patient preparation assistant. Accordingly, the court finds that Hicks has failed to demonstrate that the ALJ failed to comply with the requirements of SSR 82-62.[3]

**D.      Treating Physician**

Finally, Hicks summarily argues that the ALJ erred in failing to give controlling weight to the opinion of her treating physician, Dr. Gottipaty. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given controlling weight.") (emphasis added). If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing

---

[3] To the extent that Hicks's argument is based upon her above allegations of error by the ALJ, as stated above Hicks has failed to demonstrate that those decisions by the ALJ were unsupported by substantial evidence or otherwise controlled by an error of law.

PJG

20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

As an initial matter, Hicks fails to provide any support for her argument regarding Dr. Gottipaty. However, upon review of the record and for the reasons stated in the Commissioner's brief, the court finds that Hicks has not demonstrated that the ALJ's decision on this point was not supported by substantial evidence or was controlled by an error of law.[4] (See Def.'s Br. at 16-18, ECF No. 9 at 16-18.)

## RECOMMENDATION

For the foregoing reasons, the court finds that Hicks has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 13, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[4] The court observes that without making a specific argument, Hicks states in her brief that evidence from Dr. Gottipaty from visits in early 2009, submitted subsequent to the ALJ's decision, supports a finding that Hicks's condition has deteriorated. (Pl.'s Br. at 27, ECF No. 8 at 27.) This evidence submitted to the Appeals Council subsequent to an adverse disability determination is insufficient to render the ALJ's decision unsupported, particularly when considering that it is inconsistent with Dr. Gottipaty's earlier treatment notes that indicated improved functioning. If Hicks is asserting that her condition worsened after the ALJ issued his decision, this claim must be raised in a new application. See, e.g., Osenbrock v. Apfel, 240 F.3d 1157, 1164 n.1 (9th Cir. 2001).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).